<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| NETWORLD COMMUNICATIONS, CORP., | |
| Plaintiff, | Civil Action No. 13-4770 (SDW) |
| v. | Opinion |
| CROATIA AIRLINES, D.D., et al., | |
| Defendants. | |

**ARLEO, UNITED STATES MAGISTRATE JUDGE**

### I. INTRODUCTION

This matter comes before the Court on Plaintiff Networld Communications Corp.'s ("NCC") motion to amend. Defendants Croatia Airlines, d.d. ("OU") and Lidija Saban ("Saban") (collectively "Defendants") oppose the motion. This motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, NCC's motion is **GRANTED.**

### II. BACKGROUND

NCC is a New Jersey corporation with its principal place of business in Parsippany, New Jersey. See Proposed Second Am. Compl., Dkt. No. 25-2 ¶ 9. OU is a publicly traded Croatian corporation headquartered in Zagreb, Croatia, with the majority of its stock owned by the Croatian government. Id. at ¶ 10. Defendant Saban is an OU employee who, for the past decade, was primarily responsible for OU's relationship with NCC. Id. at ¶ 11.

Since at least 1997, NCC has served as OU's General Sales Agent ("GSA") in the United States and Canada. Id. at ¶ 2. As GSA, NCC had a variety of responsibilities relating to the marketing and sale of OU flights to North American customers, including establishing relationships with travel agents, implementing sales initiatives, and providing customer call center services. Id. During the time period in which NCC served as GSA, OU saw its North American sales grow from $2 million in 1997 to $26 million in 2012. Id.

NCC and OU's relationship was governed by a General Sales Agency Agreement ("Agency Agreement"). The Agency Agreement was executed by the parties on July 1, 2011, became effective January 1, 2012, and was to last for four years. See id. at ¶ 3; see also Agency Agreement, attached as Ex. A to Proposed Second Am. Compl., Dkt. No. 25-2. Importantly for the instant motion, the Agency Agreement contained the following provision:

> Article 24
>
> Governing Law – Choice of Jurisdiction
>
> This Agreement shall be governed by and construed in accordance with the laws of the Republic of Croatia.

See Agency Agreement, attached as Ex. A to Proposed Second Am. Compl., Dkt. No. 25-2.

On or about July 30, 2013, OU notified NCC that it was terminating the Agency Agreement effective September 1, 2013. Proposed Second Am. Compl., Dkt. No. 25-2 ¶ 4.

NCC brought suit against OU on September 8, 2013. See Compl., Dkt. No. 1. NCC's First Amended Complaint was filed on December 9, 2013. See First Am. Compl., Dkt. No. 11. In this pleading, NCC asserted, *inter alia*, OU breached the Agency Agreement by terminating the contract without good cause and, further, that Defendants engaged in a fraudulent conspiracy to deprive NCC of commissions and other revenue to which NCC is entitled. See id. NCC

alleged the following causes of action: (1) breach of contract for improper termination; (2) breach of the implied covenant of good faith and fair dealing for improper termination; (3) breach of contract for failure to pay amounts due; (4) breach of the implied covenant of good faith and fair dealing for failure to pay amounts due; (5) fraud; (6) breach of the contract for cancellation and return of the guarantee; (7) declaratory judgment; (8) accounting; (9) unjust enrichment; and (10) tortious interference with contract.  See id.

NCC now moves to amend, seeking to file a second amended complaint.  See Proposed Second Am. Compl., Dkt. No. 25-2.  NCC seeks to add only one cause of action: violation of the New Jersey Sales Representative Rights Act ("SRRA"), N.J. Stat. Ann. §§ 2A:61A-1, et seq.  See id. ¶¶ 104-112.  Defendants oppose the motion.

**III.   ANALYSIS**

NCC's motion to amend is governed by Federal Rule of Civil Procedure 15.  Under Rule 15(a)(2), a plaintiff may amend his complaint "when justice so requires."  The Third Circuit has repeatedly directed that "motions to amend pleadings [under Rule 15(a)] should be liberally granted."  Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).  The Court may deny a motion to amend only where there is: (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Here, Defendants argue only that the proposed amendment is futile.

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."  Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted).  To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Defendants offer two arguments as to why NCC's SRRA claim is futile. First, because the Agency Agreement provides that Croatian law should govern and the application of Croatian law would not violate any "fundamental policy" of New Jersey, NCC cannot allege a cause of action created by New Jersey statute. See Defs. Opp'n Br., Dkt. No. 30, at 5-7. Second, the SRRA does not apply to the allegedly unpaid compensation NCC seeks in this litigation. Id. at 8-10. As explained below, both arguments fail.

### A. NCC may bring a SRRA claim

The Agency Agreement provides: "This Agreement shall be governed by and construed in accordance with the laws of the Republic of Croatia." See Agency Agreement, attached as Ex. A to Proposed Second Am. Compl., Dkt. No. 25-2. As a preliminary matter, whether Croatian or New Jersey law applies to NCC's existing claims was not briefed by the parties and is not before the Court in the instant motion. Instead, the Court's inquiry is limited to whether NCC's proposed SRRA claim is futile because of the Agency Agreement's choice of law provision.

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 342 (1992). When determining whether to enforce a choice of law provision, the New Jersey

Supreme Court has cited Restatement (Second) of Conflicts of Laws § 187(2) (1969), which provides that the law of the jurisdiction chosen by the parties will apply unless:

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

Id. at 342.

Applying the Restatement test, the Court concludes that the application of Croatian law (such that NCC would be precluded from bringing a SRRA claim) would be contrary to a fundamental policy of New Jersey, New Jersey has a materially greater interest than Croatia in the determination of the particular issue, and New Jersey law would otherwise govern the parties' dispute.

The application of Croatian law would be contrary to two New Jersey public policies. N.J. Stat. Ann. § 2A:61A-6 provides:

> A provision in any contract between a sales representative and a principal purporting to waive any provision of this act, whether by express waiver or by a provision stipulating that the contract is subject to the laws of another state, shall be void.

This specific statute, along with the SRRA's other provisions, clearly evidences New Jersey's public policy of protecting sales representatives.[1] Furthermore, N.J. Stat. Ann. § 2A:61A-6 goes

---

[1] While Defendants argue this provision is absolutely irrelevant to divining New Jersey public policy, this position is contradicted by Defendants' own case citations. For example, in Instructional Systems, the New Jersey Supreme Court addressed whether the New Jersey Franchise Practices Act ("NJFPA") would govern a dispute between a New Jersey franchisee and out-of-state franchisor even though the parties' agreement provided California law would govern. 130 N.J. at 343. In reaching its conclusion that New Jersey law applied, the Court found: "Although New Jersey law contains no express provision against waiver of the [NJFPA's] protection, that the [NJFPA's] protection may not be waived appears to be a common assumption." Id. at 344. This language evidences that the existence of a no-waiver provision in a statute is relevant, if not dispositive, to the Court's inquiry.

a step further by specifically voiding any choice of law provision in a contract between a sales representative and principal.  In other contexts, New Jersey courts have held that contractual provisions that violate state statutes are void as against public policy.  See New Jersey Dental Ass'n v. Metro. Life Ins. Co., 424 N.J. Super. 160, 165 (App. Div. 2012) ("Although the terms of a contract are generally left to the parties, courts declare contracts invalid if they violate statutes.") (internal quotation and citation omitted); Gamble v. Connolly, 399 N.J, Super. 130, 144 (Law Div. 2007) ("Here the contract in question transgresses a statute, N.J.S.A. 46:8–10, and is, therefore, disruptive of public policy, at odds with the public interest and deleterious to the common good.").  Therefore, enforcing the Agency Agreement's choice of law provision would violate both New Jersey's public policy of protecting sales representatives and New Jersey's public policy of invaliding private contracts that violate state statutes.

Second, while Croatia certainly has an interest in this matter, New Jersey has a materially greater interest in this dispute because, *inter alia*, NCC is a New Jersey corporation, the Agency Agreement was executed in New Jersey, NCC performed its obligations in New Jersey, and NCC's injuries were felt in this state.  For similar reasons, absent the Agency Agreement's choice of law provision, New Jersey law would govern the instant dispute.  See Schmidt v. Celgene Corp., 425 N.J. Super. 600, 605 (App. Div. 2012); Alliance Shippers, Inc. v. Penobscot Frozen Foods, Inc., No. L-4374-04, 2009 WL 529241, at *5 (N.J. App. Div. Mar. 4, 2009); Bayside Chrysler Plymouth Jeep Eagle, Inc. v. Ma, No. DC-9699-02, 2006 WL 1449783, at *3-4 (N.J. App. Div. May 26, 2006); see also Restatement (Second) of Conflicts of Laws § 188 (1971).

Therefore, the Court concludes NCC's SRRA claim, at this nascent stage of litigation, is not futile.

### B. *NCC has stated a SRRA claim*

N.J. Stat. Ann. § 2A:61A-2 provides in pertinent part:

> When a contract between a principal and a sales representative to solicit orders is terminated, the commissions and other compensation earned as a result of the representative relationship and unpaid shall become due and payable within 30 days of the date the contract is terminated or within 30 days of the date commissions are due, whichever is later.

Defendants argue the SRRA is inapplicable because the allegations giving rise to the proposed additional cause of action do not relate to the solicitation of orders by NCC, but instead relate to the solicitation of orders by other parties. Defendants, in effect, argue the SRRA only applies to contracts in which a sales representative is compensated for directly selling to end-consumers. Under Defendants' interpretation, a manufacturer's contract with a sales company to solicit orders from wholesalers would be outside the SRRA's scope. Similarly, accepting Defendants' argument, the SRRA would not apply when a distributor retained an agent to solicit orders, but those orders, while solicited by the agent, had to be made through the distributor's website.

The Court disagrees. While "solicit" and "orders" are not defined in the SRRA, the definitions of neither "Principal," "Sales Representative," nor "Commission" support Defendants' narrow reading of the statute. Here, NCC and OU entered into an agreement in which NCC would be paid to solicit orders for OU, and NCC would be compensated based upon OU's sales. See Agency Agreement, attached as Ex. A to Proposed Second Am. Compl., Dkt. No. 25-2, art. 4 (stating NCC's duties include both "[t]he sale of transportation on the scheduled air services of the Principal" and "[s]olicitation and promotion of sales"), art. 9.1.2. NCC alleges it is owed unpaid commissions for: (1) direct sales to US travel companies; (2) sales made in Canada; (3) sales made on OU's website; and (4) "YQ" charges. See Proposed Second Am.

Compl., Dkt. No. 25-2 ¶ 110.  Assuming Defendants are correct that NCC cannot recover for "YQ" charges, see Defs. Opp'n Br., Dkt. No. 30, at 9, NCC nonetheless avers three other types of unpaid commissions.  The Court concludes that these three types of allegedly unpaid commissions are within the SRRA's scope, and therefore, NCC's proposed cause of action is not futile.  Additionally, Defendants do not dispute that if NCC can allege a SRRA claim, NCC can seek to recover the additional categories of damages set forth in the proposed amended pleading.  See Proposed Second Am. Compl., Dkt. No. 25-2 ¶ 112; see also N.J. Stat. Ann. § 2A:61A-3.

**IV.    CONCLUSION**

As NCC's proposed SRRA claim is not futile, NCC's motion to amend [Dkt. No. 25] is **GRANTED.**  An appropriate form of order accompanies this Opinion.

Dated: September 18, 2014                                  *s/ Madeline Cox Arleo*_____
                                                          **United States Magistrate Judge**


Orig:   Clerk
cc:     Parties
        Hon. Susan D. Wigenton, U.S.D.J.